IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

McLaws Bay, LLC

       Petitioner,

      v.

The National Wild Turkey Federation, Inc.;
and Healthy Habitats Land Trust, LLC,

       Respondents.

CIVIL ACTION NO.: 4:25-cv-128

**O R D E R**

McLaws Bay LLC ("Petitioner") petitions this Court for the termination of a conservation easement that its predecessors in interest granted to the National Wild Turkey Federation, Inc. ("NWTF"). (Doc. 1-2, pp. 31–48.) The grantors of the easement, Dasher's Bay at Effingham, LLC, River Pointe at Ogeechee, LLC, and River's Edge Landing, LLC, (the "Grantors"), originally filed this Petition in the Superior Court of Effingham County. (Doc. 1-1, pp. 3–18.) During the state court proceedings, Grantors moved to substitute Petitioner as the sole petitioner in the case and to add Healthy Habitats Land Trust, LLC ("HHLT") as a Respondent. (Doc. 1-2, pp. 4–7.) The Superior Court granted the Grantor's Motion to Substitute Parties, and the Grantors were dropped from the case. (Doc. 1-2, pp. 27–29.) HHLT, with NWTF's consent, then removed the case to this Court, claiming diversity jurisdiction. (Doc. 1.) Respondents (HHLT and NWTF) have filed a Motion to Dismiss. (Doc. 10.) Before addressing that Motion however, the Court must satisfy itself that it has jurisdiction to hear this matter. For the reasons below, the Court **ORDERS** Respondents to file supplemental briefs addressing the issue of Petitioner's standing under Article III within **twenty-one (21) days** of this Order.

**BACKGROUND**

On December 30, 2010, the three Grantors each granted a conservation easement to NWTF. (Doc. 1-2, pp. 32, 49–160.)  These conservation easements burdened a combined 1,265 acres in Effingham County, Georgia.  (Doc. 1, p. 1.)  Grantors valued the easements at over $25.5 million at the time of donation.  (Id.)  Petitioner acquired the properties from Grantors on January 31, 2020, through a series of quitclaim deeds.  (Doc. 1-2, pp. 33, 161–72.)  In April 2022, NWTF assigned two of the three conservation easements to HHLT via quitclaim deeds.  (Id. at pp. 33, 173–76.)

The conservation easements are governed by Georgia law.  (Id. at pp. 79, 116, 153.)  The Grants state that "the purpose of [these easements] is to ensure that the [protected properties] will be retained forever predominantly in [their] natural condition" and to "ensure that the [protected properties] will be retained in perpetuity predominantly in [their] natural condition for conservation purposes to benefit the public . . . ."  (Id. at pp. 54–55, 91–92, 128–29.)  Section 5.11 of each Grant of conservation easement provides that judicial extinguishment of the easements is permitted where subsequent, unexpected changes in the conditions of the protected properties or any surrounding property make the continued use of the protected property for conservation purposes impossible or impracticable.  (Id. at pp. 75, 112, 149.)  The Grants further state that the easements are to be "liberally construed in favor of maintaining the Conservation Values of the Property."  (Id. at pp. 79, 116, 153.)

Petitioner claims that Grantors and NWTF also intended for the conservation easements to qualify as "conservation contributions" under Section 170 of the IRS code, entitling Grantors to tax benefits.  (Id. at pp. 34–35; see 26 U.S.C. § 170(h)(1).)  Petitioner notes that each Grant references the tax code and provides that the easements are "intended to constitute (i) a 'qualified

conservation contribution' as that term is defined in Section 170(h)(1) of the Internal Revenue Code . . . ."  (Doc. 1-2, pp. 34, 52, 89, 126.)  Section 5.24 of each Grant states that "Grantor represents that he has consulted with an attorney [and] an accountant . . . familiar with Section 170 of the Internal Revenue [Code] for advice related to this Conservation Easement and any potential tax benefits" and that "Grantor warrants and represents that Grantee has made no warranty or representation relating to . . . any entitlement to tax benefits . . . ."  (Id. at pp. 35, 80, 117, 154.) Petitioner argues that this language "do[es] not negate the fact that the conservation easements were granted in contemplation of being accepted as conservation easements under the IRS code with tax benefits."  (Id. at p. 35.)

For the 2010 tax year, each of the three Grantors filed Form 1065, U.S. Return of Partnership Income, reporting the conservation easements as deductible partner-level charitable contributions.  (Id. at p. 36.)  On November 17, 2017, the Commissioner of the IRS (the "Commissioner") denied the charitable contribution deductions, claiming that the contributions failed to satisfy the requirements of 28 U.C.S.C. § 170.  (Id. at p. 36.)  On November 27, 2017, the Commissioner sent Grantors Dasher's Bay and River Point notices of final partnership administrative adjustment ("FPAA") determining income adjustments of $8,619,000 and $8,668,000, respectively, due to the deduction denial.  (See id. at pp. 179–80, 194–95.)  A similar FPAA was sent to Grantor River's Edge on October 24, 2017, determining an income adjustment of $8,309,000.  (See id. at pp. 209–10.)

Grantors each timely filed a petition disputing the Commissioner's determinations in the United States Tax Court.  (Id. at p. 36.)  Each of the Grantors moved for summary judgment on the grounds that the conservation easement donations met all requirements of 28 U.C.S. §§ 170(f), (h)(5).  (Id.)  The Tax Court denied each of the Grantors' motions, holding that the conservation

easements did not entitle the Grantors to tax deductions as the easements failed to satisfy the perpetuity and substantiation requirements needed for a valid contribution. (Id. at pp. 36–39, 177–221.) The Tax Court's discussion of the perpetuity requirement is relevant here.

IRS regulations require conservation easements to impose a "perpetual use restriction," restricting the use which may be made of the real property in perpetuity. (Id. at p. 37; see 26 U.S.C. § 170(h)(2)(C).) The Tax Court noted that the then-current IRS regulations provided a single, narrow exception to this requirement: Treasury Regulation Section 1.170A-14(g)(6)(ii). (Doc. 1-2 at pp. 37–38, 182, 197, 212; see also Treas. Reg. §1.170A-14(g)(6)(ii).) The Tax Court determined, based on its interpretation Section 5.12 of the Grants, that the easements did not meet this "exceedingly narrow" exception and, therefore, did not satisfy the perpetuity requirement.[1] (Doc. 1-2, pp. 37, 183, 198, 213.) The Grantors did not appeal the Tax Court's rulings, and the rulings became final on December 10, 2019. (Id. at p. 39.)

Petitioner claims that subsequent cases from the Eleventh Circuit Court of Appeals invalidated the regulation underpinning the Tax Court's holding. In Hewitt v. Comm'r of IRS, 21 F.4th 1336 (11th Cir. 2021), the Eleventh Circuit addressed an easement which contained language almost identical to that in Section 5.12 of the Grantors' deeds. 21 F.4th at 1340. There, the Tax Court had similarly ruled that the easements did not meet the perpetual use restriction requirement.

---

[1]  The exception provided under Section 1.170A-14(g)(6)(ii) requires that, when property is no longer used for conservation purposes and is disposed of, the deed of easement must grant the donee a right to the proceeds equal to the proportionate value of the easement at the time of the gift relative to the value of the property as a whole at the time of the gift. (Doc. 1-2, p. 38; Treas. Reg. §1.170A-14(g)(6)(ii).) Section 5.12 of the Grants provides that, upon termination or extinguishment of the easement, "Grantor and Grantee shall divide the proceeds from such sale (minus any amount attributable to the value of improvements made by Grantor after the effective date of the Easement, which amount is reserved to Grantor) in accordance with their respective percentage interests in the fair market value of the [protected properties] . . . ." (Doc. 1-2, pp. 75, 112, 149.) The Tax Court interpreted this as allowing Grantors to adjust the proportion of proceeds on extinguishment to account for the value of improvements made by Grantors, putting the easements outside the exception provided under Section 1.170A-14(g)(6)(ii). (Id. at pp. 37, 183.)

Id. at 1341.  The Eleventh Circuit reversed, finding the IRS's interpretation of Section 1.170A-14(g)(6)(ii) as "disallow[ing] the subtraction of the value of post-donation improvements to the easement property in the extinguishment proceeds" to be arbitrary and capricious in violation of the Administrative Procedure Act.  Id. at 1353.  In Glade Creek Partner, LLC v. Comm'r of Internal Revenue, the Eleventh Circuit applied Hewitt and held that the Tax Court could not rely on Section 1.170A-14(g)(6)(ii) in disallowing a deduction.  No. 21-11251, 2022 WL 3582113, at *3 (11th Cir. Aug. 22, 2022).

On January 15, 2025, Grantors filed their Petition for Termination of Conservation Easements against NWTF in the Superior Court of Effingham County, seeking judicial extinguishment of the conservation easements.  (Doc. 1-1, pp. 3–18.)  In their Petition, Grantors argued that the Tax Court's "judgment is now contrary to law."  (Id. at p. 15.)  Although they claimed the Tax Court's judgment rested at least partially on invalidated reasoning, Grantors argued that the judgment's res judicata effect would preclude them from retrying the case against the IRS and leaves them without an adequate remedy at law.  (Id.)  As such, Grantors sought an equitable termination of the conservation easements.  (Id.)

On April 14, 2025, Grantors moved to substitute Petitioner as the sole petitioner and added HHLT as a Respondent, but did not file a proposed Amended Petition.  (Doc. 1, p. 2; see doc. 1-2, pp. 4–7.)  On April 24, 2025, the Superior Court granted the Grantors' Motion to Substitute Parties.  (Doc. 1, p. 2; see doc. 1-2, pp. 27–29.)  On April 29, 2025, Petitioner filed the Amended Petition, and HHLT first accepted service.  (Doc. 1, p. 2; see doc. 1-2, pp. 31–48.)  HHLT removed this case to this Court on May 29, 2025, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (See doc. 1, pp. 2–3.)

5

Respondents filed a Motion to Dismiss Petitioner's claim for failure to state a claim upon which relief can be granted.  (Doc. 10.)  Before the Court can rule on that Motion however, its jurisdiction must be established.

## DISCUSSION

Article III limits federal courts to deciding "cases" and "controversies."  U.S. Const. art. III, § 2.  As a result of this limitation, only those litigants who possess standing under Article III may bring suit in federal court.  See Polelle v. Fla. Sec'y of State, 131 F.4th 1201, 1207–08 (11th Cir. 2025).  Article III standing is thus a prerequisite for federal jurisdiction, and this Court must inquire into a plaintiff's standing *sua sponte* whenever questions arise.  See id.  at 1207 (citing AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007)).  The jurisdictional nature of Article III standing obligates this Court to assure itself that standing exists at the outset of litigation.  See Munn v. Corleone's Trattoria Savannah, LLC, No. CV421-307, 2021 WL 5056076, at *1 (S.D. Ga. Nov. 1, 2021) (quoting Assoc. for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc., 385 F. Supp. 2d 1272, 1276 (M.D. Fla. 2005)).

The party invoking federal jurisdiction bears the burden of establishing standing under Article III.  Mack v. USAA Cas. Ins. Co., 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).  Here, HHLT is the party that invoked federal jurisdiction by removing this case from state to federal court.  (See doc. 1.)  Respondents thus bear the burden of establishing Petitioner's standing.  Mack, 994 F.3d at 1356.  This requires Respondents to show that: (i) Petitioner "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) Respondents "likely caused" the injury; and (iii) that the injury would likely be redressable through a favorable judicial decision.  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).  Respondents' Notice of Removal did not address Petitioner's standing, and the

6

issue has not been raised in the parties' briefings.  Upon its own review of the record, however, the Court doubts Petitioner's standing to bring this claim.  It is not clear that Petitioner has suffered an injury in fact here, and any injury that Petitioner may have suffered has not been sufficiently linked to Respondents.

The Amended Petition provides a succinct account of Petitioner's alleged injury and plea for relief.  (Doc. 1-2, pp. 31–48.)  Petitioner alleges that its property is subject to a perpetual conservation easement that significantly reduces the value of the property and limits Petitioner's use of it.  (Id. at p. 44.)  Grantors granted these easements with the expectation of a tax deduction, but that expected deduction was denied by the Commissioner and, subsequently, the Tax Court.  (Id.)  In reaching its decision, the Tax Court relied heavily on an IRS regulation that the Eleventh Circuit subsequently held to be invalid.  (Id. at pp. 41–43, 183–186.)  Despite this invalidation, Petitioner cannot retry the case against the IRS because any subsequent case would be barred by claim preclusion.  (Id. at p. 45.)  Consequently, Petitioner claims that it lacks an adequate remedy at law and will be irreparably harmed if it is not afforded equitable relief in the form of a judicial modification or termination of the conservation easements.  (Id.)

It is not clear that these allegations amount to an injury in fact.  An injury in fact must be "particularized," affecting the plaintiff in a personal and individual way.  Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016).  Even if the Tax Court's denial of Grantors' desired deduction was wrongful, that denial may not have resulted in particularized injury to Petitioner.  Petitioner cannot claim a particularized injury by asserting a violation of the statutory rights of others.  Id. at 340.  Instead, Petitioner must have suffered some invasion of its own legally protected interest.  Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996–97 (11th Cir. 2020) (internal citations omitted).  The pleadings do not make clear whether Petitioner could claim a cognizable interest in the tax

deductions at issue. Under both federal and Georgia law, tax deductions related to conservation easements are awarded to the party granting the easement. See 26 U.S.C. § 170(h); O.C.G.A. § 48-7-29.12(b) (awarding tax credits on the basis of a qualified donation of a property). Thus, it does not appear that Respondent can rely on the denial of Grantor's tax benefits to establish Petitioner's injury in fact.

The pleadings also do not establish how the easements' burden on Petitioner's property can constitute an injury in fact. Each of the three conservation easements were duly recorded in Effingham County, Georgia. (See doc. 10-2, pp. 4–6; see generally doc. 1-2, pp. 49–160 (providing the book and page numbers in the Effingham County real estate records where the grants are recorded).) Under Georgia law, a purchaser of land subject to an easement will assume the burden of the easement if they had notice at the time they took possession of the property. Mize v. McGarity, 667 S.E.2d 695, 699 (Ga. Ct. App. 2008). Properly recording an easement provides constructive notice to subsequent purchasers. Sec. Union Title Ins. Co. v. RC Acres, Inc., 604 S.E.2d 547, 550 (Ga. Ct. App. 2004). As such, it appears Petitioner had notice of the easements when it first acquired the properties in January 2020. As neither party disputes the validity of the easements or Petitioner's awareness of them at the time it acquired the properties, the Court questions whether the burdens on Petitioner's property constitute a cognizable injury.

Finally, even if Petitioner has suffered an injury here, this injury must be traceable to Respondents. According to Section 5.24 of the Grants, Grantors voluntarily granted the conservation easements to NWTF after independently consulting accountants and attorneys on the potential tax benefits. (Doc. 1-2, pp. 80, 117, 154.) The Grants expressly disclaim that NWTF made any representations or warranties related to the easements or related tax benefits. (Id.) It has not been alleged that NWTF engaged in fraudulent or otherwise tortious conduct in procuring

8

the easements.  Indeed, Petitioner has not alleged any wrongdoing on Respondents' part.  Petitioner instead seeks relief based on what it contends were wrongful decisions by the Commissioner and the Tax Court, (id. at p. 45), decisions which Respondents cannot be held responsible for.

The Court thus requires supplemental briefing on the issue of Petitioner's standing to bring this claim in federal court.  If Respondents cannot carry their burden in establishing Petitioner's standing, the Court must remand to state court.  Ladies Mem'l Ass'n, Inc. v. City of Pensacola, 34 F.4th 988, 994 (11th Cir. 2022) ("When a case is removed from state to federal court and the plaintiffs do not have Article III standing in federal court, the district court's only option is to remand back to state court.")  The Court hereby **ORDERS** Respondents to file a supplemental brief within **TWENTY-ONE (21) days** from the date of this Order that sufficiently establishes that Petitioner has standing under Article III.  Petitioner may, if it so chooses, file a brief stating its own position on this issue within **TEN (10) days** of the date that Respondents file their brief.

**SO ORDERED** this 15th day of December, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORIA