IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| McLaws Bay, LLC,<br><br>        Petitioner,<br><br>    v.<br><br>The National Wild Turkey Federation, Inc.;<br>and Healthy Habitats Land Trust, LLC,<br><br>        Respondents. | CIVIL ACTION NO.: 4:25-cv-128 |

## O R D E R

McLaws Bay LLC ("Petitioner") petitions this Court for the modification or termination of a conservation easement that its predecessors in interest granted to the National Wild Turkey Federation, Inc. ("NWTF"). (Doc. 1-2, pp. 31–48.) Respondents consist of NWTF and Healthy Habitats Land Trust, LLC ("HHLT"). (Id.) Respondents have filed a Motion to Dismiss and a Motion for Hearing. (Docs. 10, 17.) Petitioner filed a Response to Respondents' Motion to Dismiss, (doc. 14), and Respondents filed a Reply, (doc. 19). For the reasons below, the Court **GRANTS in part** and **DENIES in part** Respondents' Motion to Dismiss.[1] (Doc. 10.)

## BACKGROUND

The complete factual background of this case is set forth in the Court's previous Order directing Respondents to file supplemental briefing on Petitioner's standing under Article III.

---

[1] Petitioner requests that the Court grant oral argument on the grounds that, under the Local Rules, it is not entitled to respond to Respondents' Reply. (Doc. 17, p. 1.) Having carefully considered the parties' submissions on Respondents' Motion to Dismiss, the Court finds that there is no need for a hearing. Accordingly, the Court **DENIES** Petitioner's Motion for Hearing. (Id.)

(Doc. 21.)  The Court incorporates those facts by reference here and only restates the facts directly relevant to Respondents' Motion to Dismiss.  (See id.)

On December 30, 2010, Petitioner's predecessors in interest—Dasher's Bay at Effingham, LLC, River Pointe at Ogeechee, LLC, and River's Edge Landing, LLC (together, the "Grantors")—granted the three conservation easements at issue to NWTF.  (Doc. 1-2, pp. 32, 49–160.)  These easements burdened a combined 1,265 acres (hereinafter, the "properties") in Effingham County, Georgia.  (Doc. 1, p. 1.)  Petitioner acquired the properties on January 31, 2020, through a series of quitclaim deeds. (Doc. 1-2, pp. 33, 161–72.)  On April 29, 2022, NWTF assigned two of the three conservation easements to HHLT via quitclaim deeds.  (Id. at pp. 33, 173–76.)

Petitioner claims that Grantors (Petitioner's predecessors in interest) and NWTF intended for the conservation easements to qualify as "conservation contributions" under Section 170 of the IRS code, entitling Grantors to tax benefits.  (Id. at pp. 34–35; see 26 U.S.C. § 170(h)(1).)  Each grant references the tax code and provides that the easements are "intended to constitute (i) a 'qualified conservation contribution' as that term is defined in Section 170(h)(1) of the Internal Revenue Code."  (Doc. 1-2, pp. 34, 52, 89, 126.)  Section 5.24 of each easement states that "Grantor represents that he has consulted with an attorney [and] an accountant . . . familiar with Section 170 of the Internal Revenue [Code] for advice related to this Conservation Easement and any potential tax benefits" and that "Grantor warrants and represents that Grantee has made no warranty or representation relating to . . . any entitlement to tax benefits . . . ."  (Id. at pp. 35, 80, 117, 154.)

For the 2010 tax year, each of the three Grantors filed Form 1065, U.S. Return of Partnership Income, reporting the conservation easements as deductible partner-level charitable

contributions.  (Id. at p. 36.)  On November 17, 2017, the Commissioner of the IRS denied the charitable contribution deductions, claiming that the contributions failed to satisfy the requirements of 28 U.C.S.C. § 170.  (Id. at p. 36.)  On November 27, 2017, the Commissioner sent Grantors Dasher's Bay and River Point notices of final partnership administrative adjustment ("FPAA") determining income adjustments of $8,619,000 and $8,668,000, respectively, due to the deduction denial.  (See id. at pp. 179–80, 194–95.)  A similar FPAA was sent to Grantor River's Edge on October 24, 2017, determining an income adjustment of $8,309,000.  (See id. at pp. 209–10.)

Each Grantor filed a petition disputing the Commissioner's determinations before the United States Tax Court.  (Id. at p. 36.)  Each Grantor moved for summary judgment on the grounds that the conservation easements donated in 2010 met all requirements of 28 U.C.S.C. §§ 170(f), (h)(5).  (Id.)  The Tax Court denied each of the Grantors' motions, holding that the conservation easements did not entitle the Grantors to tax deductions as the easements failed to satisfy the perpetuity and substantiation requirements needed to qualify as a valid contribution.  (Id. at pp. 36–39, 177 –221.)  The Tax Court's holding on the perpetuity requirement was based on its interpretation of then-current Treasury Regulation Section 1.170A-14(g)(6)(ii) and its requirement that the easements impose perpetual restrictions on the use of the property, subject to one "exceedingly narrow" exception.  (Id. at pp. 37, 182, 197, 212.)  The Tax Court determined that the easements failed to comply with Section 1.170A-14(g)(6)(ii) and did not fit within the sole exception, thus failing to satisfy the perpetuity requirement.  (Id. at pp. 37, 183, 198, 213.)  The Grantors did not appeal the Tax Court's rulings, and the rulings became final on December 10, 2019.  (Id. at p. 39.)

Petitioner claims that subsequent cases from the Eleventh Circuit Court of Appeals invalidated the regulation underpinning the Tax Court's holding, citing Hewitt v. Comm'r of IRS, 21 F.4th 1336 (11th Cir. 2021), and Glade Creek Partner, LLC v. Comm'r of Internal Revenue, No. 21-11251, 2022 WL 3582113, at *3 (11th Cir. Aug. 22, 2022). (Id. at pp. 40–43.) In these cases, the Eleventh Circuit found the Tax Court's interpretation of Treasury Regulation Section 1.170A-14(g)(6)(ii) to be arbitrary and capricious and held that the Regulation itself is invalid. Hewitt, 21 F.4th at 1350; Glade Creek, 2022 WL 3582113 at *3. Petitioner argues that the Tax Court's holding denying the Grantors' benefits "is now contrary to law" because it was partially based on an interpretation of Section 1.170A-14(g)(6)(ii) which these subsequent cases have called into question. (Doc. 1-2, p. 45.)

On January 15, 2025, Grantors filed a Petition for Termination of Conservation Easements against NWTF, seeking judicial extinguishment of the conservation easements. (Doc. 1-1, pp. 3–18.) The Grantors subsequently substituted Petitioner as the sole petitioner and added HHLT as a respondent. (Doc. 1-2, pp. 4–7.) Petitioner then filed an Amended Petition on April 29, 2025. (Id. at pp. 31–48.) HHLT removed this case to this Court on May 29, 2025, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (See doc. 1.)

Respondents filed a Motion to Dismiss Petitioner's claims for failure to state a claim upon which relief can be granted. (Doc. 10.) Respondents argue that the claims are barred by Georgia's statute of limitations and that, even if the claims are timely, it would nevertheless be inequitable to extinguish the easements under Georgia law. (Id. at p. 2.) Respondents further argue that NWTF no longer has an interest in the easements at issue and that all claims against it should be dismissed with prejudice. (Id. at pp. 9, 17.) Petitioner filed a Response in opposition, (doc. 14), and Respondents filed a Reply, (doc. 19).

4

In assessing Respondents' Motion and the related filings, the Court came to question whether Petitioner possessed standing under Article III. (See doc. 21.) The Court ordered Respondents, as the parties seeking federal jurisdiction, to file a supplemental brief addressing whether Petitioner possessed standing to have its claim heard in federal court. (Id.) Respondents and Petitioner both filed briefs in response. (Doc. 22 & 23.) Now satisfied that Petitioner possesses standing under Article III, the Court turns to the substance of Respondents' Motion.[2]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] The Court's concerns regarding Petitioner's standing were due to doubts as to whether Petitioner had pled a particularized injury to its own legal interests (as opposed to Grantors' interests) and as to whether any injury suffered by Petitioner could be fairly traced to Respondents. (Doc. 21, pp. 7–9.) In their Brief, Respondents note that Petitioner alleges losses of property value and use of its land and that these alleged injuries can be traced to the Respondents' refusal to agree to release the conservation easements. (Doc. 22.) After reviewing Respondents' Brief, the Court is satisfied that Petitioner has alleged a particularized injury which is traceable to Respondents.

liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

In evaluating a motion to dismiss under Rule 12(b)(6), courts are typically confined to the "four corners of the complaint."  St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002)).  However, courts may consider exhibits attached to the complaint or incorporated in the complaint by reference.  Gill v. Judd, 941 F.3d 504, 511 (11th Cir. 2019) (citing Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014)).  A court may also take judicial notice of facts that are not subject to reasonable dispute, and it may consider exhibits attached to the motion to dismiss itself, provided they are central to the claims in the complaint and are undisputed.  Horne v. Potter, 392 Fed. App'x. 800, 802 (11th Cir. 2010).

**DISCUSSION**

Respondents offer three grounds for dismissal: (1) Petitioner's claims are time barred; (2) Petitioner cannot recover in equity because of the doctrine of unclean hands; and (3) even if

6

Petitioner's claims against HHLT survive, Petitioner has no claims against NWTF.  The Court will assess these arguments in turn.

## I.    Whether Petitioner's Claims are Time-Barred

Respondents first contend that Petitioner's claims are barred.  (Doc. 10, pp. 9–17.)  "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claims are time-barred."  Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013) (internal quotations omitted).  It must also "appear beyond doubt that the plaintiff can prove no set of facts that toll the statute."  Barrett v. United Ins. Co. of Am., Inc., 418 F. Supp. 3d 1274, 1281 (S.D. Ga. 2019) (internal quotation omitted).  The parties agree that a seven-year statute of limitations applies here, (doc. 10, p. 10; doc. 14, p. 8), but they disagree on when the cause of action accrued.  The parties also disagree on whether the statute of limitations was tolled and whether Petitioner's Amended Petition can relate back to the Grantors' original filing.  (Doc. 10, pp. 12–13; doc. 14, pp. 20–21.)

### A.    When the Cause of Action Accrued

The parties' primary disagreement centers on when Petitioner's claims to cancel the conservation easements accrued.  The parties have not cited, and the Court is not aware of, any Georgia decision that has directly addressed the issue of when the statute of limitations on a claim to cancel a conservation easement begins to run, much less the more specific question presented here, which is when the statute of limitations begins to run on a claim to cancel a conservation easement due to mutual mistake.  Instead, the parties offer competing accrual date theories from analogous lines of precedent.

Respondents cite the principle under Georgia law that courts are to look to the closest analogous legal remedy when determining the rules of limitation for equitable actions, arguing that

the present action is most analogous to an action to cancel or reform a deed.  (Doc. 10, pp. 9–10 (citing Gardei v. Conway, 868 S.E.2d 775, 779 (Ga. 2022)).)  Under Georgia law, the limitation period for such actions is seven years and begins accruing when the deed is executed.  Payton v. Daughtry, 156 S.E.2d 29, 30 (Ga. 1976).  In such actions, a plaintiff's failure to discover errors in the deed will not delay accrual unless that failure to discover was excused.  See Stone Mountain Mem'l Ass'n v. Bell, 223 S.E.2d 716, 717–18 (Ga. 1976).  Respondents thus posit that the limitations period began accruing when the conservation deeds were executed on December 30, 2010, and note that Petitioner filed the present petition over fourteen years later.  (Doc. 10, pp. 10–11.)  Alternatively, Respondents argue that the action accrued when the IRS notified Grantors that it would deny them their tax benefits (in November of 2017).  (Id. at pp. 11–12.)

Petitioner contests Respondents' characterization, urging that this action "does not involve canceling a deed or reforming a deed," but rather the termination of an easement under the Georgia Uniform Conservation Easement Act, O.C.G.A. § 44-10-1 *et seq*.  (Doc. 14, pp. 19–20.)  Petitioner contends that it was first able to maintain this action following the Tax Court's decision on December 10, 2019.  (Id. at pp. 19–20.)  Petitioner's theory of the case is that its property is burdened with a perpetual easement entered into with the expectation of tax benefits which were denied due to the Tax Court decision which "is now contrary to law."  (Doc. 1-2, pp. 44–45.)  The Tax Court's ruling was never appealed and now cannot be retried under the principle of *res judicata*, thereby leaving Petitioner bereft of legal recourse and dependent on the powers of equity.  (Id. at p. 45.)  Petitioner thus argues that this action "could not have been brought before December 10, 2019," when the Tax Court "wrongly decided" that that the conservation easements granted to Respondents failed to qualify as qualified conservation contributions.  (Doc. 14, pp. 19–20).

Under Georgia law, the statute of limitations for equitable claims is determined by the gravamen of the cause of action.  Mariner Health Care Mgmt. Co. v. Sovereign Healthcare Holdings, LLC, 917 S.E.2d 787, 794 (Ga. Ct. App. 2025).  A cause of action's gravamen may be identified by examining the allegations of the complaint, including the injury alleged and the conduct giving rise to the claim. Id.  "[T]he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." Mohar v. Leguizamo, 907 S.E.2d 923, 927 (Ga. App. 2024).

On the current record, the Court cannot find that the statute of limitations began to run on Petitioner's claims on the date the easements were executed.  The cases Respondents cite where Georgia courts have found that an action accrued on the date of a transfer all involved transfer of access or possession.  Respondents have not cited, and the Court has not found, any case where a Georgia court has extended that precedent to actions involving conservation easements.  This seems to be a distinction with a difference.  In the cases that Respondents cite, Georgia courts ground their holding in the principle that "an action to recover land can be defeated by a prescriptive title acquired by seven-years' possession under color of title." Payton, 156 S.E.2d. at 30 (quoting Stephens v. Walker, 18 S.E.2d 537, 538 (Ga. 1942)).  Without more from Respondents, the Court is not willing to apply this precedent grounded in title acquired by possession to the facts alleged here.  Additionally, at this stage, the Court must assume the truth of Petitioner's allegations that all parties to the deeds were under the belief that the conservation easements would create the expected tax benefits at the time of the execution of the deeds and they remained under that belief for some time after.  Assuming the truth of those allegations, it does not appear that Grantors could have maintained their action to a successful result at the time the deeds were executed.

At this stage and on the specific facts alleged here, it appears that the Georgia cases most analogous to Petitioner's claims are those involving mutual mistake. A "mutual mistake" is a mistake common to both parties such that "the terms and conditions of a written instrument . . . intend[ed] . . . to say one thing and by mistake express[] another, so that the instrument as written does not express the contract or intent of either of the parties." Yeazel v. Burger King Corp., 526 S.E.2d 112, 116 (Ga. Ct. App. 1999) (internal quotations omitted). Such a mistake may be one of fact or one of law. Id. Petitioner here alleges that, due to a mistake by both NWTF and Grantors as to either the easements' compliance with IRS regulations or as to how the easements would be interpreted by the IRS and the Tax Court, the conservation easements as written failed to effectuate the parties' intent. (See doc. 1-2, pp. 34–44.) Petitioner further alleges that, but for this mistake, the easements would not have been granted. (Id. at p. 40.)[3] Actions to reform written documents based on allegations of mutual mistake are subject to a seven-year limitation period, accruing once the mistake was discovered or should have been discovered. JPMorgan Chase Bank, N. A. v. DelPiano, 847 S.E.2d 369, 372 (Ga. Ct. App. 2020); Cohen v. Wachovia Mortg. Corp., 770 S.E.2d 17, 19 (Ga. Ct. App. 2015) (internal citations omitted).

Respondents argue that even if the Court applies mutual mistake precedent, Petitioner's claims are still time time-barred. (Doc 10, p. 11.) Respondents contend that Grantors would have had actual notice of their mistaken belief about the tax treatments of the easements by late November 2017, with the cause of action accruing no later than November 27, 2017. (Id. at pp. 7, 11–12.) The Amended Complaint and attached documents support Respondents' argument. (See generally doc. 1-2.) The IRS denied the tax deductions on November 17, 2017. (Id. at p. 36.) The

---

[3] In their Motion to Dismiss, Respondents have only challenged the timeliness of Petitioner's action and raised the equitable defenses discussed below. Thus, in this Order, the Court does not address whether Petitioner has stated a meritorious claim for recission of the easements based on mutual mistake.

IRS also issued FPAAs to Grantors on October 24, and November 27, 2017. (See id. at pp. 179–180, 209–210.) Thus, on the current record, it appears Grantors were aware of the mistake as to the tax benefits by November 27, 2017, if not earlier. If so, the seven-year limitation period expired no later than November 27, 2024—before the filing of both Grantors' original petition (January 15, 2025) and the Amended Petition (April 29, 2025). (Doc. 1-1, pp. 3–18; doc. 1-2, pp. 31–48.)[4]

Petitioner's claims thus appear untimely. However, dismissal under Rule 12(b)(6) will only be appropriate if it appears beyond doubt that Petitioner cannot prove any facts that would toll the statute of limitations. Barrett, 418 F. Supp. 3d at 1281.

### B.    Whether the Statute of Limitations was Tolled

Petitioner contends that the seven-year statute of limitations was tolled by 122 days due to the Georgia Supreme Court's Order Declaring Statewide Judicial Emergency (the "Emergency Order"). (Doc. 14, p. 21.) In the Emergency Order, the Georgia Supreme Court declared that "the 122 days between March 14 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation." Kennedy v. S. Univ., No. 4:21-cv-172, 2022 WL 628541, at *4 (S.D. Ga. Mar. 3, 2022) (quoting Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf [https://perma.cc/P9S5-P4LT] (July 10, 2020)). In a subsequent Guidance Order, the Georgia Supreme Court explained that

> If the period of limitation for a particular cause of action commenced prior to March 14, 2020—that is, if the "clock" had started to run before the entry of the Chief

---

[4] To be clear, the earliest date when Grantors first discovered (or should have discovered) the alleged mistake is a question of fact, and the Court does not opine on whether Petitioner's argument is correct at this time as further discovery may reveal that Grantors knew or should have known of the mistake at an earlier date such that their Petition was untimely even with the 122-day tolling discussed below.

11

> Justice's order—the running of the period of limitation was suspended on March 14, and the running of that period will resume when the tolling provision of the March 14 declaration has expired or is otherwise terminated.

Id. at *5 (quoting Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04 06 20.pdf [https://perma.cc/9SH8-HV9D] (Apr. 6, 2020)).[5]

Petitioner argues that the 122-day tolling extends the statute of limitations to at least February 24, 2025 (if the cause of action accrued on October 24, 2017, when the first FPAA was issued) and potentially as late as March 29, 2025 (if the cause of action accrued on November 27, 2017, when the last FPAAs were issued and after the IRS denied the deductions).  (Doc. 14, p. 21; see also doc. 1-2, pp.  36, 179–180, 209–210).  As Grantors filed their initial Petition on January 15, 2025, their action was timely if the cause of action accrued on the dates suggested by Petitioner. (Doc. 1-1, pp. 3–18.)  The only question at this stage is whether Petitioner can potentially prove facts which would toll the statute.  Barrett, 418 F. Supp. 3d at 1281.  In light of the Emergency Order, Petitioner can potentially prove that the statute of limitations was tolled and that, as a result, Grantors' original petition was timely filed.

### C.  Whether the Amended Petition Relates Back to the Original Petition

Petitioner did not file the Amended Petition until April 29, 2025.  (Doc. 1-2, pp. 31–48.) Respondents thus urge that "[t]he question is whether [Petitioner] can piggy-back on the Grantors'

---

[5]  In evaluating a motion to dismiss, a court may take judicial notice of certain facts outside the pleadings without converting the motion to dismiss into a motion for summary judgment.  Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)).  The Court here takes judicial notice of the Emergency Order and the Guidance Order as they are "public records that are 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [cannot] reasonably be questioned.'"  Id. (quoting Fed. R. Evid. 201(b)).

filing when [Petitioner] is [a] separate and distinct legal person under Georgia law with different interests." (Doc. 19, p. 10.) In other words, Petitioner's claim would be timely only if the Amended Petition can relate back to the filing of Grantors' original Petition.

In federal court, the relation back of amendments is governed by Federal Rule of Civil Procedure 15(c). However, "[b]ecause Georgia law provides the applicable statute of limitations in this case, if a proposed amendment relates back under Georgia law, then that amendment relates back under Rule 15(c)(1)(A) even if the amendment would not relate back under federal law rules." Presnell v. Paulding Cnty., 454 F. App'x 763, 767 (11th Cir. 2011) (internal quotations omitted). Relation back under Georgia law is governed by O.C.G.A. § 9-11-15(c). Here, the amendment at issue is the substitution of Petitioner for Grantors as the sole petitioner in the case. (See generally doc. 1-2, pp. 31–48.) While Section 9-11-15(c) does not expressly address the relation back of an amendment changing the party bringing the claim and instead focuses on amendments changing the party *against* whom the claim is brought, the statute has been held "also applicable to amendments as to plaintiffs." Gordon v. Gillespie, 217 S.E.2d 628, 633 (Ga. Ct. App. 1975). The Georgia Court of Appeals has explained that

> relation back [of an amended complaint] occurs both as to the plaintiff and the defendant when the new and old parties have such an identity of interest that it can be assumed, or approved, that relation back is not prejudicial; and that the new "cause of action" "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."

Id.

Respondents argue that Petitioner's claims cannot relate back to Grantors' original petition because there is no "identity of interests" between Petitioner and Grantors. (Doc. 19, p. 10.) Respondents characterize Grantors' claims as "premised entirely on the contention that their tax deductions were disallowed" and aver that Petitioner "cannot argue an identity of interest because

13

the Grantors claimed the deductions in 2011, not [Petitioner]." (Id.)  This argument is unavailing. While it is true that Petitioner has no interest in the tax deductions Grantors claimed, that is immaterial.  Grantors' original petition did not seek to recover the value of their tax deductions but instead sought an equitable termination of the conservation easements burdening their properties—the very same relief Petitioner seeks.  (Compare doc. 1-1, pp. 15–17, with doc. 1-2, pp. 44–45.)  In short, Petitioner is now in possession of Grantors' properties and seeks to continue Grantors' action for equitable termination of the easements burdening those properties.  Permitting the relation back of Petitioner's Amended Petition therefore poses no risk of prejudice to Respondents.

Due to the 122-day tolling imposed by the Emergency Order, the Court declines to dismiss Petitioner's claims as untimely as a matter of law.  The Amended Petition and attached documents do not clearly establish the untimeliness of Petitioner's action as required to support a motion to dismiss on statute of limitations grounds.  Gonsalvez, 750 F.3d at 1197.  While facts may emerge establishing that Grantors knew or should have known about the alleged mistake earlier such that the claim is untimely even with the 122-day tolling, dismissal on timeliness grounds is not appropriate at the present procedural posture.

## II.      Whether Equity Bars Petitioner's Claim

Respondents further argue that equity warrants dismissal, contending that Petitioner has unclean hands and is consequently barred from obtaining an equitable remedy by O.C.G.A. § 23-1-10.  (Doc. 10, pp. 15–17.)  Section 23-1-10 provides that "[h]e who would have equity must do equity" and precludes claims for equitable relief where the claimant has acted wrongfully.  See Bazemore v. U.S. Bank, N.A., 167 F. Supp. 3d 1346, 1357 (N.D. Ga. 2016), aff'd, 692 F. App'x 986 (11th Cir. 2017); see also Dobbs v. Dobbs, 515 S.E.2d 384, 385 (Ga. 1999) (internal quotations

omitted) ("[O.C.G.A. § 23-1-10] embodies both the 'unclean hands' doctrine and the concept that 'one will not be permitted to take advantage of his own wrong.'")  Respondents claim that Petitioner is "ask[ing] for relief from harm that the Grantors inflicted upon themselves" by executing deeds which failed to follow then-existing IRS guidance and by failing to reform the deeds when they had the opportunity to do so.  (Doc. 10, p.16.)  Respondents argue that this constitutes unclean hands and thus precludes equitable relief.  (Id.)  Respondents further cite Georgia's "two innocents" doctrine outlined in O.C.G.A. § 23-1-14.  (Id. at pp. 16–17.)  Under O.C.G.A. § 23-1-14, when "one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss."  Based on this doctrine, Respondents contend that even if Grantors relied solely on non-parties to review the deeds, Petitioner's claims are still barred.  (Id.)

Petitioner correctly claims that whether it or its predecessors in interest acted inequitably is typically a question of fact that generally cannot be decided at the motion to dismiss stage.  (Doc. 14, p. 16 (first citing Sorrow v. 380 Props., LLC, 840 S.E.2d 470, 474 (Ga. Ct. App. 2020); then citing Schoenbaum Ltd. Co., LLC v. Lenox Pines, LLC, 585 S.E.2d 643, 657 (Ga. Ct. App. 2003)).)  Unclean hands is an affirmative defense, and "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss."  Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1225 n.8 (11th Cir. 2016); Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir.1993).  An affirmative defense will support a motion to dismiss under Rule 12(b)(6) only "when [the complaint's] own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."  Fortner, 983 F.2d at 1028 (quoting Quiller v. Barclays Am./Credit Inc., 727 F.2d 1067, 1069 (11th Cir. 1984)).  It must be that Petitioner's "own allegations show

15

that the defense exists" such that its claim "has a built-in defense and is essentially self-defeating." Quiller, 727 F.2d at 1069 (internal citations omitted).

Here, the allegations in the Amended Petition show that Grantors failed to comply with IRS guidelines. Even leaving aside Grantors' compliance with the perpetuity requirement and the validity of the Tax Court's holding on that issue, the Amended Petition and attached documents indicate that Grantors failed to comply with reporting requirements. (Doc. 1-2, pp. 39–40, 188–89, 203–04, 218–19.) Petitioner does not allege that the Tax Court's holding on this issue is affected by the Eleventh Circuit's rulings in Hewitt or Glade Creek.[6] Grantors' failure to fully comply with IRS requirements is thus clearly apparent from the allegations.

This is not to say, however, that Grantors' *unclean hands* are clearly apparent from the allegations. That Grantors erred in some way does not automatically render Grantors' (or Petitioner's) hands unclean and preclude any claims for equitable relief; rather, for the doctrine to apply, Grantors' conduct must constitute "an inequity which infects the cause of action so that to entertain it would be violative of conscience." Krieger v. Bonds, 775 S.E.2d 264, 271 (Ga. Ct. App. 2015). As the cases Respondents cite indicate, (doc. 10, p. 16 n.48), the unclean hands doctrine is typically applied to bar equitable claims by those who engaged in affirmative acts of wrongdoing. See, e.g., Williams v. Williams, 336 S.E.2d 244, 245–46 (Ga. 1985) (unclean hands barred plaintiff's suit seeking to compel his former wife to reconvey two tracks of land to him where plaintiff admitted that he placed the property in his former wife's name to avoid an alimony claim against it by his second wife); Bank of New York Mellon v. Edmondson, 812 S.E.2d 299,

---

[6] While Petitioner does contest the validity of the Tax Court's holding on the reporting requirements, it offers only conclusory assertions of error. (Doc. 1-2, p. 39.) The Court need not accept such bare assertions in evaluating a motion to dismiss and, at any rate, will not entertain a collateral attack on the Tax Court's final ruling. Ashcroft, 556 U.S. at 678; In re Watson, No. 374-21, 1977 WL 1327, at *2 (S.D. Ga. Dec. 8, 1977) ("Tax Court decisions . . . are *res judicata* and are not subject to collateral attack in this court.").

16

302 (Ga. Ct. App. 2018) (unclean hands barred mortgagee's claim for an equitable lien on mortgagor's interest in property following loss of a security deed where mortgagee had forged the deed in question). Respondents do not provide any authority indicating that a failure to comply with regulatory requirements by itself rises to the level of unclean hands, and Amended Petition's allegations do not show that either Grantors or Petitioner engaged in conduct so egregious as to clearly establish that affirmative defense. As such, the Court declines to dismiss Petitioner's claim on grounds of equity.

### III.    Whether NWTF is a Proper Defendant

Respondents finally argue that Petitioner has no right to equitable relief against NWTF as NWTF no longer possesses an interest in the easements at issue. (Doc. 10, p. 17.) The Amended Petition and attached exhibits show that NWTF assigned its interests in the Dasher's Bay and River Edge easements to HHLT via two quitclaim deeds on April 29, 2022. (Doc. 1-2, pp. 33, 173–76.) Respondents have attached a third quitclaim deed to their Motion to Dismiss showing that NWTF also assigned its interest in the River Pointe easement to HHLT on the same day. (See generally doc. 10-2.) However, this latter quitclaim deed was not recorded until May 12, 2025, after Petitioner filed the Amended Petition. (Id. at pp. 2–3.) The assignment became effective upon recording. (Id. at p. 2.) As NWTF lacks any remaining interest in the conservation easements, Respondents claim that NWTF is not a proper defendant and that all claims against it should be dismissed with prejudice. (Doc. 10, p. 17.)

The Court agrees with Respondents and finds that the claims against NWTF are moot.[7] When a defendant in a dispute over real property assigns its interest in the property such that the

---

[7] Respondents do not expressly argue that claims against NWTF are moot. However, because mootness "strik[es] at the very heart of federal subject matter jurisdiction," the Court can raise the issue *sua sponte* if not addressed by the parties. Medberry v. Crosby, 351 F.3d 1049, 1054 n.3 (11th Cir. 2003) (quoting Sannon v. United States, 631 F.2d 1247, 1250 (5th Cir. 1980)).

court cannot grant the plaintiff their desired relief, that claim for relief becomes moot and must be dismissed. See Marmol v. Kalonymus Dev. Partners, LLC, 161 F.4th 715, 724 (11th Cir. 2025) (claim for the specific performance of a sale of property dismissed as moot where defendant assigned its interest in the property to third parties such that the court could not grant the requested relief); Aquamar S.A. v. Del Monte Fresh Produce N.A., 179 F.3d 1279, 1287 (11th Cir. 1999) ("[I]f intervening events have made it 'impossible for [the Court] to grant any effectual relief whatever to the prevailing party,' we must dismiss [the claim as moot].") (alterations adopted); see also Gibble v. Sec'y of U.S. Dep't of Hous. & Urb. Dev., No. CV 22-4992, 2025 WL 606178, at *2 (E.D. Pa. Feb. 24, 2025) (action to quiet title dismissed as moot where defendant released its liens and retained no further interest in the property). A case is moot if the parties lack a legally cognizable interest in the outcome. Aquamar S.A., 179 F.3d at 1287. Federal courts lack subject matter jurisdiction over moot claims, and any decision on the merits of a moot issue constitutes an impermissible advisory opinion. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004). Respondents' argument thus constitutes a factual attack on the Court's subject matter jurisdiction, and the Court may therefore go beyond the pleadings and consider extrinsic evidence in evaluating Respondents' challenge—including the quitclaim deed attached to Respondents' Motion. See Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).

Here, NWTF's assignment of its interests in Petitioner's properties strips it of any cognizable interest it may have had in the outcome of this action. Granting Petitioner's requested relief of terminating the easements would not implicate NWTF's interests in any way. While Petitioner has also asserted a claim against NWTF for attorney's fees pursuant to O.C.G.A § 13-6-11, (doc. 1-2, pp. 46–47), that statute "does not create an independent cause of action" and only "establishes the circumstances in which a plaintiff may recover" litigation expenses as an

18

additional element of damages.  Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC, 862 S.E.2d 295, 302 (Ga. 2021) (internal quotations omitted).  As Petitioner has no surviving claims against NWTF, the Court dismisses NWTF from this case.

**CONCLUSION**

On the current record, it is not readily apparent that Petitioner's claims are untimely or that equity bars Petitioner's claims.  As such, the Court **DENIES** Respondents' Motion to Dismiss as to these arguments.  (Doc. 10.)  However, NWTF has no remaining interest in the outcome of this proceeding, and Petitioner has no surviving claims for relief against it.  The Court thus **GRANTS** Respondents' Motion as to the dismissal of NWTF, (id.), and **DISMISSES AS MOOT** all claims against NWTF.  The Court **DIRECTS** the Clerk of Court to update the docket accordingly.

**SO ORDERED** this 30th day of March, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA